Welcome to the 5th circuit. We have one case in our docket this afternoon. I assume that you are experienced counsel. If you're not, when the yellow light goes on, that's warning you that your time is is being frittered away and the red light is warning you that you should stop talking and we'll help you with that if you don't. But otherwise, we are glad to have you here and and to hear argument in this interesting matter. So we call case number 22 dash 60458 in Ray, Louisiana Public Service Commission. And we will hear first from Mr. Fontham for the Louisiana Public Service Commission. Good afternoon, sir. Good afternoon. May it please the court. My name, as the judge said, is Mike Fontham. I represent the Louisiana Commission. The issue in this case is may FERC ignore statutory commands that it give priority or preference to Section 206 consumer complaint cases over other non-priority matters pending before it. And in particular, may FERC do that in a case where there is an extremely high probability of irreparable harm that irreparable harm continues for each day that FERC delays with regard to issuing a decision. I believe that two of the matters that were subject to our mandamus petition may be resolved. The 152 case was set for hearing in November so that we don't have any request of relief with regard to that. And FERC has said it will issue a substantive decision next week or at least this month in the case in docket EL 18152 and docket EL 1182, which are apparently going to be decided together. One of the cases that we had petitioned about was the 18152 case. So 18152 is, for lack of a better term, moot. I'm not sure if that's legally exact, but something is happening in that. 18152, what was the other one, just so I understand? The first one was the 2156 case, which was a pending complaint that FERC had just never acted on for a year and a half. So what we have remaining are EL 17-41, EL 18-142, EL 18-204. That's the ones I have. And really the operative ones are 17-41 and 204. FERC dismissed 142 and we amended. So it's 204 and 17-41. Okay, that's helpful. And you mentioned irreparable harm and the other, FERC and other parties are making the argument that not all of the, I'll get this wrong, you'll correct me, but not all of the, to the extent that there's irreparable harm, that is the idea that a rate, overpayment by a consumer cannot be, I don't know, reimbursed or refunded, right, after a 15 month, beyond 15 months. But that's not the case with everything in these cases, right? There are some things that can be refunded. In those two cases it is. In those two it is, okay. Those are the only issues in those two cases. So there's no tariff violation. Okay. And the, you know, if you base it on the judge's decision, which simply followed FERC precedent from its recent ROE cases and its recent capital structure case, Mystic Constellation, the judge has followed FERC precedent and it's a $50 million difference a year from the current rate. So the refund period's expired in 2018 and 2019 and it's been now, you know, going on, well, four years for one case, three years for the other case, with no protection for consumers. And, you know, energy just over collects. Now, I suppose, you know, there's a very remote possibility FERC could reverse on both of those, but it does, it's impractical, it won't, it's extremely, extremely remote. So my first point, though, goes to the statute. And I think, you know, basically the issue here is if Congress does not set a hard and fast deadline, does that mean that terms of the statute are meaningless? FERC, historically, under Section 205 of the Federal Power Act, utilities could file a rate request and they got to put it into effect after a short time, usually today, it's two months. And, you know, they were directed under Section 205, FERC was, to decide the case as speedily as possible and give preference to the 205 cases over other matters pending before it. But when the Regulatory Fairness Act came along, what Congress wanted to do was basically equalize the circumstances. And so they said you give it the same preference, and this is in 206B, which is the Regulatory Fairness Act. They said you give the same preference as you're directed to do under Section 205. They called it 824DD of the codification of the statute, but that's what it is, Section 205. And otherwise act as speedily as possible. There's no dispute that that has not happened in this case. Nobody claims they've given preference to this case. This case is involved, we're over four years, you know, and the refund periods are done. And what we know they've been doing instead is prioritizing these, you know, green energy policies to retard pipeline construction and LNG terminal construction. And, you know, causing companies to have to factor in all kinds of future hypothetical damage. And they get those out very quickly. But I think what's even more interesting is there's no provision in the Federal Power Act for expediting the settlement. They got that settled. FERC has told you, oh, that was so complex and so difficult to resolve that uncontested settlement in three months after the comments were filed. Three months, five years. This is uncontested, they're just ignoring it. And they say we can ignore it. They say, well, no hard and fast deadline doesn't mean anything. And I think the recent Supreme Court cases and the Allegheny Power case from the D.C. Circuit make it very clear, you know, if Congress wants to do something and it uses language like give it a preference, you know, it can't be declared meaningless by a court, or it shouldn't be. What would you have us order? How would you frame relief that would meet your problems? I'm sorry, we have the same problem. I'll speak up, if you will, we'll be even. My question is, how would you frame the relief that you seek from this court? I think what we said in the petition that the court should order FERC to decide the case within 90 days. You know, it's clear that once the court sent an oral argument, you know, they got moving pretty darn fast. And, you know, they can do it. It's not a big deal. And I want to point out something about this irreparable harm. As I said, all the judge did was he applied for a precedent. You know, that's a $50 million difference. It's been over $150 million since the refund period expired, the last one. And FERC has said we ain't, you know, filed two complaints, we're not granting second refunds, which we had filed two complaints to try to preserve our rights. But in the case they're holding this case up for, MISO, that MISO case, which is on remand from the D.C. Circuit, they've committed that they're going to give retroactive relief back to the first order they issued in that case, which was in 2016. Those ratepayers are protected. So what do we tell them? What do we tell FERC? What do we tell them? What does this court say to FERC? Resolve the cases next time or? Well, I think for our cases, which are the two before you, which is the docket, you know, MISO case isn't before you. But these two cases are cases involving the Grand Gulf Nuclear Power Plant and the rates for that plant. And our request is that the court say, FERC, you know, you've delayed it and you're supposed to give it preference, and 90 days sounds reasonable. If you want to come in and explain why you need 120, you know, we'll listen to you. But, you know, in the past, FERC has said things like we'll decide it next month, you know, in coming in response to a petition for mandamus. They can do it. They've had months and months to act on the MISO remand. But in that case, there's no irreparable injury. And there's another similar case where they actually issued an order and they've announced they're going back to the time of the first order, no matter how it comes out, no irreparable injury. The one where there is irreparable injury is this case. And they're basically saying we get to wait. We get to wait until the settlement's done. We get to wait until MISO's done. And, you know, that's not a justification. Well, let's talk about our authority to do this. I mean, in terms of fashioning relief, it doesn't seem to fit within our court precedent for mandamus, or does it? Talk a little bit about that. And so how do we put parameters on this? Well, Your Honor, I think the cases are clear. And I don't think it's really contested that there's court jurisdiction to compel agency action. That's under the Administrative Procedure Act. And it's unreasonably withheld. That's in the Administrative Procedure Act. How do we flesh out what is reasonable or not reasonable? Well, there's precedent about a rule of reason that is the track case, which the D.C. Circuit decided years ago. But that was in a case where there wasn't a statutory requirement of a preference. I mean, this is a statutory mandate. And track factors, but this is a stronger case then. Absolutely, Your Honor. It's got a clear statutory mandate in our view. And, you know, there's also protecting, you know, the idea of protecting the court's jurisdiction. Because if we're delayed forever, how do we get an appeal? I mean, you know, five years, I could croak judge, you know, before some of these cases get decided. Couldn't we all, but hopefully not. I certainly hope not. But let me just build on this. I mean, you're saying four years or more. Yes, sir. I notice in the FERC briefs and maybe in the other brief, the delay was being characterized as one and a half to two at most. What accounts for the difference in parties? Well, Your Honor, I'm saying four years since protection for the rate payers ran out. It's, you know, it's going on two years since the ALJ decision. It was issued in March 2021. I see. So for 1741, it was filed in 2017. ALJ decision is 21. Yes, sir. And that was also the decision in the 204 case. It's two different dockets, but FERC's chief ALJ consolidated them for hearing. So, you know, that was another thing that delayed the proceeding besides FERC messing around with its ROE policies while they were giving protection to the consumers, which they aren't doing in this case. And I want to point out something else. It was raised by Entergy. Oh, gee whiz, if you do something, you might impede settlement. Well, first of all, they haven't been talking settlement with any of the other retail regulators. But think of the situation. I mean, you're supposed to have an even playing field under the Regulatory Fairness Act. The utility gets its money starting in approximately two months. The rate payers have to wait. The rate payers are going to be put into settlement negotiations, and they have to go through the administrative process and so on. Think of the burden of waiting. You can take a lowball settlement and get some relief. Or if you want to get something fair, you've got to wait and wait and wait until FERC gets around to deciding your case in the face of a statutory mandate that they give preference to the case. And they have been ignoring that. They're ignoring it in this case, these two cases. And, you know, we know it's an unusual remedy, but we're asking for the court to remedy it because we don't have anywhere else to go. And the other point is any retail regulator could have dealt with this in a very short time. An excessive ROE, return on equity, excessive equity ratio, but we're forced to go to FERC. The Supreme Court has said you've got to go to FERC. Well, isn't there some responsibility of FERC that goes with that? In terms of the statutory mandate that you're talking about, just so I understand it, it is a mandate to treat 206 petitions, if that's the right term. Well, it says, Your Honor, the same preference as under 205. Well, 205 says give it a preference over other questions pending before it and decide the case as speedily as possible. They're just ignoring it. So that's the statutory mandate we're talking about. Is there anything else? Are there any hard and fast dates or day periods? Well, there's the 180-day explanation period under 206 if they've delayed for more than 180 days in a final decision. That's what Congress expected, 180 days. They're supposed to issue an explanation of why they delayed and when they're going to decide the case, which they haven't done. What FERC does instead is when it first sets the case for hearing, it says, Oh, we estimate that if this happens and that happens, then we'll be able to decide the case. They predicted they'd have decided these two cases by 2020. Is it your position that the 180-day explanation requirement has also not been met? It hasn't been complied with. That's what I mean. Yes, sir. There's no explanation of why they've delayed, absolutely none. Okay, thank you, sir. Mr. Fontham, you have time for rebuttal. We will next hear from Mr. Glover from the Federal Energy Regulatory Commission, or from DOJ. On behalf of FERC. May it please the Court, I'm Matthew Glover, and I represent Respondent at the Federal Energy Regulatory Commission. I am from the Federal Energy Regulatory Commission. Judge Duncan, as I told the Clerk, the last time I appeared in this Court I was from DOJ, so perhaps there's some confusion with my ECF. My sheet says DOJ, so you're from DOJ. Go ahead. Thank you. Before I get into the merits of our argument as described, I just want to sort of reemphasize where we are in the various proceedings. As you went through with Mr. Fontham, Judge Duncan, in what we call the Grand Gulf Prudence Complaint EL21-156, the Commission, at its open meeting on November 17th, issued an order setting that for settlement procedures and a hearing if those settlement procedures don't occur. I think Mr. Fontham conceded that that was all of the relief they asked for in this proceeding. At the same hearing, we put out the Mississippi settlement. We approved that. We've issued that in all of the complaints at issue here and an additional 10, I think, or maybe it's another eight, dockets. I filed a letter on Monday to let you know that the Commission intends by the end of the year to act on what we call the sale leaseback initial decision, so that's EL18-152, and that leaves only the return on equity proceedings, as you were discussing with Mr. Fontham. Again, in the return on equity proceedings, we've acted on the Mississippi settlement, so that issue is out of the way. We do have a remand in the Mid-Continent or MISO transmission owners case from the D.C. Circuit. There, the D.C. Circuit told the Commission that one aspect of our – we had a series of large orders. I think I described them a little bit at about page 16 of our response in which we laid out our return on equity process, and we changed positions a couple of times there. The D.C. Circuit has said that we did not explain the last piece of that, and so on remand, it being an APA violation, the Commission has the option to explain that we want to continue using that methodology. Or, you know, we could change sort of how we address the return on equity. But that is an active remand. I think Mr. Fontham noted that was – I believe that's a Section 206 case that was filed in 2016. So in terms of mandamus for unreasonable delay, the D.C. Circuit has said a number of times that you don't use that in order to jump the queue. One of the cases that says that that's cited in our brief is the In Re Public Employees for Environmental Responsibility. I think there might be some other words in there. It's a 2020 case. And so Mr. Fontham's suggestion, at least what I thought he said today to this court, was that we should address his complaint in return on equity before we address the Mid-Continent Transmission Orders complaint. But that would be using this court with a mandamus petition to jump the very queue. And just stepping back to the legal question, mandamus itself is an extraordinary form of relief. Mandamus for unreasonable delay is an even more extraordinary form of relief. And here we don't think that they have put forward evidence. First of all, as described in our brief, we don't think that the statute compels this 60-day sort of deadline. And as the D.C. Circuit said about the 180-day deadline, that's not a deadline for action. It's a deadline for an explanation. Second, we don't think they've put forward evidence showing that we are not prioritizing or we are not giving timely attention to Section 205 and 206 proceedings. They've picked three specific 206 proceedings. The commission faces dozens, if not hundreds, of Section 205 and 206 filings from programs other than the energy system. If you were to pull the commission minutes, or I think we put out a summary and we have a sort of docket for our meeting, the meeting November 17th, in which we acted on the Mississippi settlement and we acted on the EL21-156 complaint, you'd see we ruled on other Section 205 and 206 proceedings that are outside the energy system in those hearings. The agency provided the explanation to the Louisiana Public Service Commission? No, I don't believe so, Your Honor. Why not? I mean the statute says do so within 180 days. I take your point. Could that have basically obviated the need for us to be here if you just explained some of this? Maybe, maybe not, but you haven't done it, so why not? So I don't think so. As to the EL18-142, the remaining complaint, the return on equity complaint that they filed, the 180 days is for a final decision from the filing, and so that was filed I believe August 29th of 2018, so the 180 days would have run from then. At that time, the case was still in front of the administrative law judge having hearings. I think on my notes it looks like the hearing, the trial-type proceeding took place in June of 2019, so from August 2018, I think that would be more than 180 days. So, you know, the case was in a trial before our administrative law judge, it was in proceedings before the trial at the 180-day point. I didn't understand, and I did not understand their mandamus really to ask us to state why we had not issued an order. Again, I didn't do the math on the 180, but I think that would have been in early 2019 when it was still in front of the ALJ. I'm just asking. The statute says you're supposed to do it, and you hadn't done it. I understand that, Your Honor. That does flow into the argument that the statute also says you're supposed to give priority and, you know, rule in reasonably quick fashion, and their argument is you haven't done that either. So I think if we turn to the statutory provisions, I have a couple of observations on that, Your Honor. One is that, as Mr. Fotham noted, the statute in Section 206 says to give the same preference and rule as speedily as possible, and that points to the preference in Section 205, describing shall give to the hearing and decision of such questions, these are 205 filings, preference over other questions pending before it, and decide the same as speedily as possible. Congress didn't say you shall decide this on X date or you shall decide this within 30 days or 60 days or 120 days. One of the cases we cite, the Inree Bluewater Navy, the D.C. Circuit case from 2000, there Congress had instructed after the Exxon Valdez oil spill that I think it was the Department of Interior, but it may have been another department, but that they shall issue safety regulations related to oil tankers by a specific date in 1991. It was the Oil Tanker Something Act of 1990 said you shall issue these regulations by 1991. The agency still hadn't taken any action on the regulations. They put out a temporary regulation in 97 that they rescinded in 98 or 99. So in 2000, the D.C. Circuit said you had the statutory deadline of 1991, but it said that deadline itself didn't grant or sort of warrant mandamus for unreasonable delay. But nine years after that deadline, having done nothing, that's unreasonable delay. And so that sort of extreme proceeding here, Congress didn't tell the commission you shall decide these cases within X number of days. Even the 180 days in Section 206 just says if you haven't decided it, tell them why and when you think you might. Congress has put some. But have you done that? No, but I don't understand that to be the relief that they are asking for. I'm just asking what the statute says and why you haven't done it, and you still haven't told me why the agency hasn't provided the explanation within the statutory time frame. I appreciate that, Your Honor. I don't know. I don't know that you do because you still won't answer it. I mean, its statute says what you're supposed to do. And what I'm hearing from you is, well, the agency can pretty much do what it wants to do. That's not what I'm saying at all. Okay. Agency gives these cases significant attention. I can't speak to why the agency on the 180th day didn't give an explanation. Mr. Fontham didn't ask that in the petition. I think if that had been a part of their petition, it's something we would have responded to. So as I stand here today, I'm not sure. Again, just sort of doing back of the envelope math, I think the 180th day was when the case was still before the ALJ. So, you know, again, the commission hasn't spoken to this, but standing at the podium, I think at that time the commission would have said something along the lines of this case is in front of an ALJ. It's set for a hearing, you know, I think it would have been a few months out from then. We haven't decided it because this is a complicated, you know, return to equity, complicated accounting issue, and, you know, it's in front of the ALJ. The petitioners, you heard Mr. Fontham's answer to Judge Higginbotham, is asking for an order that you decide the case. Let's take 17-41 within 90 days. Now, is that, in your view, is that just impossible? Is it impractical? What is your reaction to that request for relief, just from a practical standpoint? So I would have a couple of points. First, the commission, you know, is giving these cases the attention that they're due when we're deliberately and sort of processing them. I think that would likely require jumping the queue, as I was talking about the D.C. Circuit has said, don't jump the queue from things like, again, the transmission owner's remand. That's a proceeding that was filed a year or two years before these proceedings, and we are still sort of deciding the return on equity issue there. If the court orders the commission to take action, I think the commission always tries to respond to court orders and would do everything it can to respond to whatever the court ordered. So as I understand it, the D.C. Circuit said the return on equity analysis, for lack of a better term, needs to be rethought by FERC, or at least you need to provide additional explanations for that. Are you saying that is necessary? It is necessary for you to take care of that, for FERC to take care of that, before you're able to resolve 17-41 or the other case? Yes, so we had set out in the series of orders, I think it was 569 and then 569A and B. Again, the specific ones are cited if I've named the wrong orders. But we had set out in orders that were part of that proceeding what our return on equity methodology was going to be for transmission, and so that's their return on equity challenge. The initial decision, the administrative law judge was applying the methodology from those orders that have now been, I think, I don't recall whether it was a remand without vacature, but they've been sent back from the D.C. Circuit with instructions to, as Your Honor said, re-evaluate. And so tell me, what is FERC doing with respect to that? And can we use your answer there, your forecast there, to understand what's the time frame for deciding this case? So I know that the Commission is working on orders that would, you know, I guess respond to the remand from the D.C. Circuit, just as they are working on orders in these cases. You know, the Commission doesn't work on a single sort of 205 or 206 complaint when it's filed, but that is where sort of the focus for the Commission has been in the orders that are on remand from the D.C. Circuit, because that's where we chose to or that's where we did lay out our comprehensive return on equity methodology. In these mandamus cases that you're familiar with, do courts, whether D.C. Circuit or whatever courts, sometimes not order a full-blown mandamus, you must do X within this time frame, but do they order other kinds of relief that doesn't quite go that far? Yeah, I'm trying to think of specifically, I don't think it was core communications. There's one or two of the cases. It may have been the public employees for environmental responsibility where the agency had said they hadn't taken action in nine years, and then they had put out a schedule saying, you know, we hope to issue this rule in, again, that may have been Blue Water and Avia. I apologize off the top of my head. But the court said, you know, we're not going to tell you when to act, but we think your schedule is good and we're going to retain your schedule. How about ordering the parties to confer on some kind of timetable so that at least we have some kind of definite deadlines that are benchmarks for when this thing needs – I mean, it's been pending that 17-41 was filed in 2017. But, Your Honor, again, I think that – you know, these cases have gone before an administrative law judge. They've had a trial-type hearing. They've had proceedings, and so that took place from 17. Again, the initial decision was in March of 2021, so the trial aspect of that before it goes to the commission as the five commissioners, you know, didn't complete until March. The briefing on exceptions between the parties didn't complete until May of 2021. And so I think, you know, they like to say that this is pending four years, but it was pending before the ALJ. They had a trial. They filed lots of different motions between the two sides. They take evidence. So I'm not sure that it's accurate to say it's been pending because the commission itself doesn't act – the commission acted by sending it to an ALJ to have a trial to develop the record. You know, so I'm not sure that's the right frame, and that's where I think you had asked Mr. Fontham what the difference in kind of the two parties. We look at it as how long is it pending with the commission as the commission since the ALJ had issued its order? How long was the briefing on the exceptions to that order pending? And I think, you know, the commission has been working on orders in all of these things. I think he made a suggestion that once he filed, suddenly these orders were coming out. And, again, the letter I filed about the commission's intent, normally we don't sort of discuss our internal deliberations, but we also said in our brief we were intending by our November meeting to issue a ruling on the Mississippi settlement. Those orders were in work before this mandamus petition was filed. It's not like nothing is going on with these proceedings and then suddenly a mandamus petition is filed. The commission is – you know, we have a staff that works on all of these energy projects. I think if you look at footnote three and four of our brief, we describe a number of the orders, and the only orders I included there are not ALJ proceedings but orders the commission itself put out on energy matters during the period in which this initial decision to now. And so, you know, we laid out a handful or I'm not sure even how many. Well, Counselor, you described these delays and described that this is the real world as if there's no counter world. What's causing these delays? You say, well, they're not delays because you have to do this. I find that to be an inadequate explanation. FERC is charged by the Congress to undertake these tasks. When you take years and years and leave them and don't react, this leaves the allocation of costs, the huge expenses imposed improperly in place. It's not that they're waiting on you to help them. People are being damaged daily by the inability, I'll put it inability, to run this program in a reasonable way. These delays don't make sense. So I think I'm about to be in the red light. Please go ahead. A couple of points to that, Your Honor. First of all, I think it's premature to talk about what the damage or what a remedy would be because the commission itself has not— I'm not talking about remedies. I'm talking about the reality of the inaction, the inability of FERC to apparently do this. I don't suggest it's willful. Whatever the reasons are, structural, whatever, it's not happening. Somebody needs to be in conversation with you that's not part of the problem and to try to figure out how you move these cases in the proper way. The commission receives lots of Section 205 and 206 filings, not just from Louisiana. We do process it, and we do put out a number of orders on these. We put out a number of orders in these specific Louisiana— So do we. But we don't— When something gets behind, we find out what the problem is, and we take care of it. And I don't hear that coming. You're describing this is the way the system is. I go back to my question. What should we—what, in your view, should we do? Your suggestion is we do nothing? Or suppose we redirected that you meet with the parties and develop a plan and sequence for these cases and negotiate out what you do and report back to the court. So I think that's problematic for a couple of reasons. The first would be, again, I go to the point that you're not supposed to use mandamus to jump the queue. And if they wanted to show that the commission is systematically— Again, the language from Congress was give them preference over other questions pending. And just as a footnote to that, Section 4 of the Natural Gas Act has similar language for Natural Gas Act rate filings, that they shall be given preference over other matters pending or other proceedings pending. That identical language was added to the Natural Gas Act in 1938, three years after it was added to the Federal Power Act. So arguably the later-in-time statute, I guess if you were sort of looking at preferences, that might be the thing that needed even more preference. But Congress did not say you shall decide these within X number of days. They did not say that you shall decide, you know, all of these proceedings. And so if you were to give us an order as to these— I think it's three now remaining Section 206 proceedings and urge us to move those sort of more expeditiously, it doesn't take account of all of the Section 205 and Section 206 proceedings that don't involve the parties here or the— Are all your Section 205 and 206 proceedings this old? You know, at the meeting in—at the November meeting, I think they ruled on some that were from Section— or that were sort of 18EL. EL is the—or EL rather than—EL is a 206 proceeding, I believe. When you look at our dockets, an ER is a 205 proceeding. I think at the November meeting there were some from 2018, some from 2017 that were acted on. Often they have these trial-type proceedings. Often they involve considerable evidence and back and forth between the parties. What's the average age of the pending 205 and 206 petitions? I couldn't tell you that as I stand here, Your Honor. I mean, I think the other side's argument is not so much that they want to jump in ahead of the queue, they just want to get in the queue. They keep saying that they're getting pushed out of the queue or they're not in it at all. Your Honor, I'm not sure that they presented evidence saying, look, the commission is prioritizing this Section 205 or this Section 206 proceeding. The things that they pointed out were a couple of system energy filings under 205, which we noted one of them actually took longer to be set for a hearing than two of the three proceedings at issue here. And then they had that other one. I don't think that's enough evidence to show sort of unreasonable delay. They made no comment as to the commission's dealing with 205 and 206 proceedings elsewhere. And then they pointed to some natural gas procedures. The commission has a large staff. We employ environmental scientists. We employ accountants. We employ engineers. And so I don't think when Congress said give priority to these questions, again, that being 205, 206, but also the Natural Gas Act Section 4, it meant you must give priority to those and not do things like issue certificates under Sections 3 and 7 of the Natural Gas Act. Congress was well aware of how to cabin the commission's authority, and one way that it did that was in, I think, Section 203, which I believe was the Energy Policy Act of 2005. It's described, I think, at page 18 of our response. But Congress there for certain mergers said, you know, the commission shall within so many, I think it was put in days and not months, rule on these merger applications, and if not, you can extend it for an X period. So Congress stated a deadline and gave a legal consequence to that. Mr. Fontham highlighted the Allegheny case. This is entirely unlike that, that Section 313 of the Federal Power Act, 16 U.S.C. 825L. There Congress said that if you file for rehearing and the commission has not acted within 30 days, the rehearing is deemed denied. The D.C. Circuit interpreted that deemed denied to mean the party has had their rehearing denied, and now they may go to the Court of Appeals because you need a denial of a rehearing for there to be jurisdiction in the Court of Appeals. All right. Well, thank you. Thank you, Mr. Glover. And now we'll hear from Ms. Thompson for System Energy Resources. Thank you, Your Honor. May it please the Court, Elodie Thompson, Quinn Emanuel, or Carden Sullivan, on behalf of the intervenors, System Energy Resources, Energy Corporation, Energy Services, and Energy Operation. Now, System Energy owns 90% of the Grand Gulf Nuclear Power Plant located in Mississippi. It's the largest single-unit nuclear reactor in the United States. It's the anchor plant in Mississippi. It provides power to four states in the area. As has been pointed out, there have been a number of Grand Gulf proceedings over the years, and at issue here are, in the dockets that were presented in the Mandamus petition, novel and complex issues that seek awards for claims worth potentially billions of dollars, which System Energy could not afford. So at this point, I'm grateful for the time to argue here because System Energy is caught in the middle, between LPSC wanting to move quickly, FERC moving on its own timetable, System Energy wanting it to get done correctly. It needs to be right because there are important issues at stake here. There are, of course, in these proceedings not only the hearing order, but then there are burdensome discoveries, sometimes thousands of data requests, from LPSC and the other complainants. There are expert witnesses. There are depositions. There's a hearing going on right now in another docket that is in its 11th week. FERC is moving forward on some of these things, but the question here for System Energy is whether there will be enough time for FERC to get it right. The return on equity proceeding, which I understand is the only one for which the LPSC is seeking an order, requires FERC to first determine whether there will be a change in the methodology. If there is a change in the methodology for calculating return on equity, then there will have to be an evidentiary proceeding involved in the dockets that are the subject of the mandamus petition. And so after the determination by FERC on whether there's a change in methodology, we'll have to go through the testimony and the hearing again to determine what the result will be. And so I think it's important not to rush FERC, although it obviously, as your Honor has pointed out, we perhaps could have avoided this with the explanation out of 180 days, but to make sure that there's enough time so that System Energy's rights are not compromised in these proceedings. Does CERI have a position on the relief we should fashion? I mean, is it feasible to do what the petitioner wants to do, decide it within 90 days? Is there some other time horizon? Or is the idea of ordering the parties to negotiate to come up with some sort of timeline for resolution? I mean, what is your position on that or any of those options? Right. Well, I think ordering FERC to act in a certain time period in the return on equity proceeding would risk that FERC would not, at the end of the day, get it right, and it would be counterproductive because then it would be up on appeal again and then on remand. So I think what needs to happen is FERC— We'd risk duplicating what's going on with the D.C. Circuit. And further delaying a final determination in these proceedings. I think that once FERC issues its decision on whatever the change of methodology is, or if there's going to be an explanation for the methodology on remand, then that will decide whether there's going to be further evidentiary proceedings. Of course, the parties always work together with the hearing judge to determine the timeline for those proceedings. I would expect that to happen as well. And that can take place after FERC issues its decision on the change of methodology. So what would you ask this Court to do? Our view is that the petition should be denied because it's important that the rights of system energy are not compromised by forcing FERC to rush along. This is not a case in which FERC has not been acting at all for years, but it has been proceeding. Things have been going on. Things continue to go on. The other thing I want to raise, though, before I run out of time here, is that my friend on the other side mentioned that there are not ongoing settlement discussions, and that is incorrect. And given the complexity of these proceedings, given the burden of them, it's in everyone's interest that they be settled. The settlement with Mississippi was reached in June, and then a few weeks later this mandamus petition was filed. The terms of that settlement were offered to all of the retail regulators, LPSC, Arkansas, and the Council of the City of New Orleans. Discussions are ongoing right now with Arkansas and the Council of the City of New Orleans. Only the Louisiana Public Service Commission has not engaged in settlement discussions, and, of course, system energy stands by ready to engage in those discussions. And so given that the settlement is a global settlement of 13 pending dockets, certainly there's an efficiency in that, and I wanted to make sure that was corrected on the record. Thank you, counsel. Thank you. Mr. Fontham, you have some time for rebuttal. May it please the Court, every time energy has said discussions are ongoing with any of the regulators, I've checked with the co-counsel for the other regulators, and each time they tell me no discussions are ongoing. So I don't credit what counsel says, and I don't think counsel can back it up, but I know for sure that they haven't had discussions with us, and the LPSC is not going to enter a settlement that waives any claim, known or unknown, whether you've ever heard of it or not, which is what this settlement with Mississippi requires. I would like to say with regard to this first point that counsel made, you know, nobody denies that FERC is busy, that they've got a lot of stuff to do. That's why Congress said you have to prioritize these cases. You know, I mean, your job is to set rates, and then if you have other things that, you know, are on the agenda you'd like to do, that's fine. But prioritize these cases. And, you know, they churn out these policy statements, sometimes without any comments, and they're just revising them and so on. They've got commenters in there saying you don't even have the authority to do this, FERC, and that's what they're working on. So what do we do about it? What do you ask us to do about it? I think, Your Honor, in this case, you know, this is not a circumstance in the MISO case. Our case was delayed while FERC adopted one methodóhad one methodology, adopted a new methodology, then adopted a new methodology after that, and then adopted a new methodology after that. So what do we do? Well, Your Honor, I think what you should do is tell them to decide the case within 90 days. But the alternative, which the D.C. Circuit has done, where they had a commitment from the FCC that they were going to decide the case, which you don't have here, any sort of a commitment. They said we're going to retain jurisdiction. And we know, as Judge Wilson pointed out, they haven't done the 180-day explanation of why they delayed the case, especially in the face of this irreparable harm, and they haven't given the estimate of when they're going to decide the case. You could say issue that within 30 days. And then, you know, we retain jurisdiction. If that seems unreasonable, then, you know, LPSC can come back. I could see that being a reasonable outcome. What I hear from FERC is that there is no real delay. This is just inherent in the process. Well, Your Honor, there is delay inherent in the process. We do not deny that. How do we sort that out? Well, you sort it out by the fact that in this case there's no claim. It's been prioritized over non-priority cases. There's no claim that they've done that. So they admit they haven't done that. Okay? So that's a violation of the statute. And, you know, we agree that our case was extended because in a case where they protected the consumers from irreparable harm, Opinion 569, and I can give you the site if you want it. I brought it. They said we're going to go all the way back to 2016 with whatever relief we wind up with. And it's not true they take cases in order of filing because before MISO they had issued the so-called Emera Main case, which had already been remanded. They haven't done anything with that remand. They switched over to the MISO case and issued their new rule. What is your best example from a circuit court of a court enforcing this prioritization mandate from the statute? Do I know of a case? Yeah, what's the best example of a court saying, yes, we see this prioritization mandate from the Regulatory Fairness Act is not being met here, here's the remand? Well, I think, you know, I don't have a situation where a court said that. I think the Allegheny Power case is a good example, though, which said, you know, 30 days you can go to the court of appeal if they haven't ruled on your rehearing. Well, what FERC did was they issued tolling orders. They said, we grant rehearing for the purpose of reconsideration, and they've been doing that for years, so then they take another year or two to decide if they're going to grant rehearing. And the D.C. Circuit said when statutes say something, they mean what they say. FERC's ignoring the statute. And that's what I'm saying. Now, we don't have 30 days, and it's denied. But why would we want it to be denied, knowing that in 30 days we're going to get denied? I mean, that is not something that we would want. We want FERC to prioritize the case, taking into consideration they've protected ratepayers in these other cases. We're not protected, and we've been yinged and yanged for years, and now it's a year and a half since the case was before them. It's just not right. So that's our argument. Thank you, counsel. Any other questions? Thank you. Thank you for a well-argued case. We appreciate this. The arguments will take the matter under submission, and the panel is adjourned until tomorrow morning at 9 a.m. Thank you.